UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Platinum Hail and Dent Co., ) | |
| ) | C/A No.: 6:15-1658--GRA |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | (Written Opinion) |
| Ultimate Hail and Dent Co., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Pending before the Court is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. For the reasons stated below, the motion is GRANTED.

### I. Background Information

Plaintiff, Platinum Hail and Dent Company ("Platinum"), is a South Carolina corporation engaged in the business of repairing dents in automobiles. ECF No. 8 at 1–2. Defendant, Ultimate Hail and Dent Company ("Ultimate"), is a Texas limited liability company which also repairs dents in automobiles. *See* ECF Nos. 13-5 & 13-7. Ultimate's president and part owner, Manfred Jackson ("Jackson"), organized Ultimate in August 2014 while employed by Platinum as an independent contractor. ECF Nos. 13-4 at 2 & 13-5. In his role at Platinum, Jackson helped create Platinum's website, trademarks, and other marketing materials, including "vehicle wrap" used by Platinum's representatives during sales calls. ECF No. 13-4 at 1–2. Shortly after Jackson resigned from Platinum in March 2015, Platinum's president and part owner, Kam Houghtaling ("Houghtaling"), first became aware of Ultimate. *Id.* at 2. Upon

investigation, Houghtaling believed the website, trademark, and marketing materials used by Ultimate were substantially similar to those used by Platinum. *Id.*

Platinum filed suit against Ultimate on April 16, 2015 alleging that Ultimate infringed Platinum's federally registered trademark in violation of 15 U.S.C. § 1114, committed false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a), infringed Platinum's copyright in violation of 17 U.S.C. § 501, and violated South Carolina's Unfair Trade Practices Act.  ECF No. 1.  On April 20, 2015, counsel for Platinum sent Jackson a letter demanding that Ultimate immediately stop using all infringing marks in its business.  ECF No. 13-1.  The parties then initiated settlement discussions, which culminated in a series of emails sent between the parties' attorneys between May 13 and May 27, 2015.  *See* ECF Nos. 13-2 & 14-1.

In an email sent on May 13, 2015, Platinum's counsel offered to settle the dispute between the parties if Ultimate agreed to either:  1) cease using the allegedly infringing trademark within one week and reimburse Platinum for attorney's fees; or 2) cease using the allegedly infringing trademark within 2 months, during which time Ultimate would pay Platinum $10,000 per week of continued use.  ECF No. 13-2. According to Houghtaling, Ultimate accepted this offer on May 20, 2015 in an email sent by its attorney agreeing to pay Platinum $4,000 to resolve the matter.[1]  ECF No. 13-4 at 2; *see also* ECF 13 at 2.  Ultimate rejects Houghtaling's assertion and claims that, because Ultimate's response to Platinum's offer contained new terms and failed

---

[1] The email stated in relevant part:

> My clients have agreed to pay $4,000 to resolve this matter.  Due to the source of funds, they may need 60 days to pay.  So the only remaining issue seems to be the vehicle.  If you can please let me know about the vehicle and send me over a settlement agreement (shorter is better), we should be able to conclude this matter.

ECF No. 13-3.

to resolve all previously identified issues between the parties, the response actually constituted a rejection of the offer followed by a counter-offer, which Platinum never accepted. ECF No. 14 at 2. To buttress its argument, Ultimate points to emails transmitted between the parties' attorneys after May 20, 2015, in which the attorneys discuss whether Jackson must remove wrap from Ultimate's vehicles. *Id.; see also* ECF No. 14-1.

After Ultimate failed to perform under the alleged agreement, Platinum amended its complaint on June 9, 2015 to include a cause of action for breach of contract. ECF No. 8 at 8. On July 9, 2015, Ultimate filed the instant Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). ECF No. 12. As the basis for its motion, Ultimate argues that it lacks sufficient minimum contacts with South Carolina such that subjecting it to suit in the State would constitute a violation of due process. *Id.* at 3–6. In an affidavit supporting Ultimate's motion, Jackson states that Ultimate has never engaged in any activity which falls within the purview of South Carolina's long-arm statute. ECF No. 12-2. Specifically, the affidavit states that Ultimate has never contracted to do business in the State, sold, produced, or manufactured goods or services in the State, committed a tortious act or caused a tortious injury in the State, or owned property in the State. *Id.*

Platinum responded in opposition to Ultimate's motion on July 27, 2015. ECF No. 13. In its response, Platinum contends this Court has personal jurisdiction over Ultimate because "[Ultimate] (1) entered into a contract with a South Carolina company that was to be performed, in part, in South Carolina; and (2) caused tortious

injury in South Carolina by an act committed outside the State." ECF No. 13 at 1. With regard to Platinum's first argument, Houghtaling asserts in a supporting affidavit that, had Ultimate performed under the disputed contract, Platinum would have deposited the funds in a bank in South Carolina and moved to dismiss this suit in the District of South Carolina. ECF No. 13-4 at 2–3. To support its second argument, Platinum maintains that copyright and trademark infringement are intentional torts causing damage to reputation, and the effects of the tort were directed at and felt in South Carolina.[2] ECF No. 13 at 3–6. On August 6, 2015, Ultimate filed a reply to Platinum's response outlining its position that no contract existed between the parties, disputing Platinum's characterization of Jackson's motives for organizing Ultimate, and arguing Platinum offers no factual or evidentiary support for the notion that Ultimate directed tortious conduct at South Carolina. ECF No. 14.

## II.   Standard of Review

When a court's personal jurisdiction over a non-resident defendant is properly challenged, the plaintiff has the burden of establishing grounds for jurisdiction by a preponderance of the evidence. *Mylan Lab., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60–61 (4th Cir. 1993); *see also Gentry Tech. of S.C., Inc. v. Baptist Health S. Fla. Inc.*, No. 1:11-cv-1232, 2012 WL 847540, at *5 (D.S.C. Mar. 13, 2012). However, in the event a district court decides a pre-trial challenge to personal jurisdiction without holding an evidentiary hearing, "the plaintiff need prove only a prima facie case of personal

---

[2] Specifically, Platinum argues that Ultimate's conduct meets the "effects test" because: 1) Ultimate caused injury to Platinum's reputation by creating consumer confusion; 2) Platinum has "developed a great deal of good will and reputation in South Carolina;" thus, the brunt of the harm was felt in South Carolina; and 3) Ultimate directed its conduct at South Carolina when, through Jackson, it "intentionally sought employment for a South Carolina company . . . so that it could steal [Platinum's] intellectual property and unfairly compete with [Platinum]." ECF No. 13.

jurisdiction." *Mylan*, 2 F.3d at 60 (citation omitted). "In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Id.*

### III.    Legal Discussion

A district court may assert personal jurisdiction over a non-resident defendant if: 1) a proper statutory basis exists under the forum's long-arm statute; and 2) assertion of jurisdiction does not overstep the bounds of constitutional due process. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.* 334 F.3d 390, 396 (4th Cir. 2003). The South Carolina Supreme Court has held that the State's long-arm statute is coextensive with the limits of the Due Process Clause. *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997); *see also S. Plastics Co. v. S. Commerce Bank*, 423 S.E.2d 128, 130 (S.C. 1992). As a result, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *ESAB Grp.*, 126 F.3d at 623. (quoting *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir. 1996)) (internal quotation marks omitted). Thus, the pinnacle question in this case is not whether Ultimate's activities meet the black letter requirements of South Carolina's long-arm statute, but whether its activities are sufficient to satisfy the requirements of constitutional due process.

In determining whether personal jurisdiction over a non-resident defendant is constitutionally permissible, a district court must consider whether the defendant has sufficient "minimum contacts" with the forum state such that the imposition of personal jurisdiction "does not offend traditional notions of fair play and substantial

justice." *Carefirst*, 334 F.3d at 397 (citing *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)).  Generally, a defendant is said to have adequate minimum contacts with the forum when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)) (internal quotation marks omitted).  This standard injects an element of foreseeability into the constitutional analysis, which is typically satisfied when a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Id.* at 474–75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (internal quotations marks omitted).  "Such activities need not involve physical presence in the state, but must still be 'purposefully directed toward the forum state.'" *ESAB Grp.*, 126 F.3d at 623 (quoting *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994)).

The concept of purposeful availment has given rise to two distinct forms of *in personam* jurisdiction—general and specific jurisdiction.  A court may assert general *in personam* jurisdiction over a defendant if the defendant has engaged in "continuous and systematic" activity such that it is "essentially at home" in the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (citing *Int'l Shoe*, 326 U.S. at 317)); *see also ESAB Grp.*, 126 F.3d at 623.  This is a high standard, which Platinum does not allege is satisfied in this case.  Instead, Platinum argues Ultimate is subject to specific *in personam* jurisdiction in South Carolina.  When an allegation of specific *in personam* jurisdiction is raised, a court

must assess the "nature and quality" of the defendant's contacts with the forum state and determine whether the asserted claim arises in some way from those contacts. *See Int'l Shoe*, 326 U.S. at 318–19; *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 279 (4th Cir. 2009). Importantly, "the contacts related to the cause of action must create a 'substantial connection' with the forum state," and "the defendant's actions must be directed at the forum state in more than a random, fortuitous, or attenuated way." *ESAB Grp.* 126 F.3d at 625 (citing *Burger King*, 471 U.S. at 475; *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen*, 444 U.S. at 299).

 *a. Ultimate's Contractual Contacts with South Carolina*

 Platinum's first argument in opposition to Ultimate's motion hinges on whether the alleged settlement agreement between Platinum and Ultimate created adequate minimum contacts with South Carolina. Although the parties dispute the formation of a contract, in light of the deferential standard afforded to Platinum, this Court will assume that a valid settlement contract existed between the parties for purposes of ruling on Ultimate's motion. Nonetheless, this Court finds that Platinum has failed to meet its burden of proving a prima facie case of personal jurisdiction arising from the settlement agreement.

 In *Burger King v. Rudzewicz*, the United States Supreme Court addressed the validity of in-state contacts created through contractual relations with an out-of-state defendant. In its decision, the Court noted "the need for a 'highly realistic' approach that recognizes that a 'contract' is ordinarily but an intermediate step serving to tie up prior business negations with future consequences which are themselves the real

object of the business transaction." *Burger King*, 471 U.S. at 479 (citing *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316–17 (1943)).  Although it is true that a single contractual relationship may furnish the basis for jurisdiction, *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957), according to the Court, the existence of an agreement with an in-state party alone does not establish personal jurisdiction over an out-of-state defendant.  *Burger King*, 471 U.S. at 478.  Instead, the terms of the agreement must be analyzed along with the parties' course of conduct, negotiations, and future expectations to determine whether the defendant has purposefully availed itself of the forum state.  *Id.* at 479.  Since *Burger King*, a number of decisions in the Fourth Circuit have followed the principle that contractual contacts must be accompanied by an element of foreseeability to meet the minimum contacts test.  *See Consulting Eng'rs*, 561 F.3d at 280–82 (holding that minimum contacts test was not satisfied where the quality and nature of the defendant's contractual contacts with the forum did not give rise to purposeful availment); *Diamond Healthcare of Ohio v. Humility of Mary Health Partners*, 229 F.3d 448, 451–52 (4th Cir. 2000) (holding that defendant had insufficient minimum contacts with forum where the plaintiff initiated contact with the out-of-state defendant and the bulk of the contract was to be performed out of state);  *Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1127–29 (4th Cir. 1986) (holding that a single contractual transaction with an out-of-state defendant did not provide sufficient minimum contacts where communications were initiated by the plaintiff, payment was tendered out of state, and there was no agreement for a continuing business relationship).

Here, the contractual contact between Platinum and Ultimate fails to satisfy the minimum contacts test for several reasons. First, unlike in *Burger King*, Ultimate did not reach out of state to negotiate and enter into a carefully crafted agreement with Platinum. Rather, counsel for Platinum initiated settlement discussions in a letter sent to Ultimate after Platinum had already filed its original complaint with this Court. ECF Nos. 1 & 13-1. Second, the contacts established through the agreement were of a highly transitory nature—the agreement contemplated a single settlement between the parties without provisions for protracted future dealings. *See* ECF Nos. 13-2; 13-3 & 13-4. This is in contention with the long-term, enduring business relationship contemplated in *Burger King*, and it is distinguishable from the single-transaction insurance contract providing for coverage over the course of several years in *McGee*. *See McGee*, 355 U.S. at 221–23. Finally, although Platinum may have anticipated performing part of the contract in South Carolina by depositing funds in a South Carolina bank and moving to dismiss this action in the District of South Carolina, it appears that the bulk of the contract—indeed the essence of the agreement—was to be performed by Ultimate out of state (*i.e.*, removal of Platinum's trademark from its website and marketing materials). Further, Platinum's place of performance appears to have been unilaterally chosen by Platinum, and as such, it bears no weight in a personal jurisdiction calculation. *See* Chung, 783 F.2d at 1128 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

After carefully reviewing the above facts, this Court is convinced that Ultimate's contractual contacts with South Carolina are too attenuated to provide a basis for the type of substantial connection with the State needed to satisfy constitutional due process. Accordingly, Platinum has failed to meet its burden of proving a prima facie case of personal jurisdiction arising from the settlement agreement.

### b. Ultimate's Tortious Contact with South Carolina

Platinum's second argument looks to the nature of tortious harm caused in South Carolina by Ultimate's out of state actions. To support its argument, Platinum relies on the so-called "effects test." Here again, this Court will assume for purposes of ruling on Ultimate's motion that Ultimate's activities amounted to tortious conduct. Nonetheless, this Court finds that Platinum has failed to make out a prima facie case of personal jurisdiction pursuant to the effects test.

When a plaintiff invokes the effects test to establish personal jurisdiction over an out-of-state defendant, the plaintiff must show:

> (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

*Consulting Eng'rs*, 561 F.3d at 280. Importantly, "the effects test does not supplant the minimum contacts analysis, but rather informs it." *Id.* The touchstone of the jurisdictional analysis remains whether the defendant established minimum contacts with the forum, and the place the plaintiff feels the alleged injury is but one factor to weigh in making this determination. *Id.* at 280–81 (quoting *ESAB Grp.*, 126 F.3d at 626). Absent this approach, jurisdiction would always hinge on where the plaintiff

chooses to establish a residence because the plaintiff "*always* feels the impact of harm [in its home state]." *ESAB Grp.*, 126 F.3d at 626.  This is not the paradigm contemplated by the United States Supreme Court when delineating the boundaries of due process in a personal jurisdiction analysis.  *See id.*

Here, Platinum argues the brunt of the harm caused by Ultimate's alleged trademark infringement was felt in South Carolina because trademark infringement constitutes an injury to reputation and Platinum "has developed a great deal of good will and reputation in South Carolina." ECF No. 13 at 5–6.  However, even if this is true, Platinum fails to provide sufficient concrete examples of Ultimate's purposeful availment of South Carolina (*i.e.*, tortious conduct expressly aimed at the State) to satisfy the minimum contacts test.  The fact most favorable to Platinum's position is that Jackson was employed by Platinum when he organized Ultimate. ECF Nos. 13-4 at 2 & 13-5.  Platinum does not allege, however, that Ultimate has any other tangible connection to the State, nor does it aver that Jackson worked in South Carolina or entered the State during his employment.  Instead, Platinum simply asserts that "[Ultimate], acting through [Jackson], intentionally sought employment for [*sic*] a South Carolina company headquartered in this State so that it could steal [Platinum's] intellectual property and unfairly compete with [Platinum]."  ECF No. 13 at 6.  This assertion is dogmatic and unsupported in the record.  Absent additional facts indicating that Ultimate expressly directed its conduct at South Carolina, this Court finds that Ultimate lacks sufficient minimum contacts with the State to support a finding of personal jurisdiction.  Thus, Platinum has failed to meet its burden of

establishing a prima facie case of personal jurisdiction based on Ultimate's alleged trademark infringement.

## IV. Conclusion

Concepts of reasonableness and fairness are "inherently incapable of . . . precise definition;" therefore, courts must analyze each challenge to personal jurisdiction separately without turning to a "talismanic or mechanical test." *Chung*, 783 F.2d at 1129 (citing *Kulko v. Cal. Superior Court*, 436 U.S. 84, 92 (1978)).  With this principle in mind, this Court has carefully reviewed the facts, supporting documentation, and overarching circumstances of this case, and this Court finds that it lacks personal jurisdiction over Ultimate.  Accordingly, Ultimate's Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED.  Having dismissed the case, Ultimate's Motion to Dismiss for Improper Venue is moot.

**IT IS SO ORDERED.**

_____
G. Ross Anderson, Jr.
Senior United States District Judge

September 23, 2015
Anderson, South Carolina